```
                    UNITED STATES DISTRICT COURT
                            FOR THE
                      DISTRICT OF VERMONT
```

UNITED STATES OF AMERICA        ]
                                ]
    v.                          ]  Case Nos. 2:11-cr-150-1,2
                                ]
PARIS QUILTER and               ]
MARVIN ACHAO,                   ]
                                ]
        Defendants.             ]

## Memorandum & Order
## Defendants' Motion to Suppress

The grand jury returned a two-count indictment charging defendants Paris Quilter and Marvin Achao with conspiracy to distribute, and possession with intent to distribute, cocaine. ECF No. 14.  Quilter filed a motion to suppress evidence seized from his hotel room at the Days Inn in Colchester, Vermont.  ECF No. 33.  Achao joined in the motion.  Mot. to Suppress 1.  For the reasons stated below, the motion to suppress is **denied**.

### Factual Background

On November 9, 2011, the staff of the Days Inn called Detective Sergeant Charles Cole of the Colchester Police Department shortly before noon for assistance in responding to complaints from guests and staff about an odor of burnt marijuana coming from Room 317, on the third floor.  The hotel manager could smell the odor outside her office on the first floor. Detective Cole, together with Corporal Roger Fisher and Detective Tyler Kinney, responded to the complaint at about 12:21 p.m. They learned Room 317 was rented to Paris Quilter from Boston. The officers went to the third floor and could immediately smell

the marijuana. They were directed to Room 317 by staff. The odor of burnt marijuana became more intense as they approached Room 317.

    While standing at the door outside Room 317, the officers heard a TV and male voices. Detective Cole knocked. He noticed a person approached the door and then moved away. The officers could hear movement inside the room, including the opening of a door to the balcony. Detective Cole knocked at least two more times and identified himself as a Colchester police officer. After nearly two minutes, Quilter opened the door. Cole asked him to move into the hallway and speak with Detective Kinney. Meanwhile, Cpl. Fisher held the door open while both he and Cole stayed in the threshold. He and Detective Cole noticed Achao standing a few feet from the door with his hands in his pockets and another individual on the far bed, lying face down with his arms underneath him. While standing in the hallway, Detective Cole asked Achao to take his hands out of his pockets, and he complied. Cole asked the other individual, who was later identified as Rolando Miranda, to get up from the bed and show his hands. This person did not move. Cole then asked Achao if they could come into the room. Achao nodded his head affirmatively and moved to the side to permit them to enter. Cole entered the hotel room and immediately saw a knife on the TV stand. He told Achao and Miranda that he would move the knife closer to him for the protection of all. Both men agreed. Cole again demanded that Miranda get off the bed and show his hands,

2

and this time Miranda complied.

Detective Cole asked both individuals to identify themselves. Achao initially gave the officers a false name, while Miranda identified himself. The officers asked for record checks and determined Miranda had an active arrest warrant. The officers arrested him, and he was transported to the Colchester police station once the search had been completed.

Detective Kinney spoke with Quilter in the hallway. The officer told Quilter they had received complaints from other guests and staff about odors of burnt marijuana emanating from his room. Quilter said they had smoked marijuana but thought it may be all gone. Kinney asked Quilter for consent to search the room so that they could ensure there was no more marijuana present. Quilter asked what would happen if he refused. Kinney said they would secure the room and apply for a search warrant. They would search the room if a warrant was obtained. Quilter told Kinney he would consent. Kinney read Quilter a consent search form, which Quilter signed. Kinney then entered Room 317 and told Detective Cole he had obtained consent to conduct a search. Quilter remained near the threshold of the room. At no time was Quilter restrained in any way. The conversation between Kinney and Quilter was respectful and cordial.

Once Kinney entered the room, he asked Achao if there was any marijuana in the room. Achao walked out on the balcony and returned, handing Kinney a small baggie containing marijuana. Kinney then went out on the balcony and found a clear plastic bag

3

containing suspected cocaine. He brought the cocaine back into the room and asked who possessed the drug. No one responded. Cole and Kinney then conducted a search of the room and found other drugs. Cole found a large duffel bag and asked whether the bag belonged to Achao. Achao said yes and gave consent for Cole to search it. In the duffel, Cole found approximately $10,000 wrapped in $1000 units. During this time, no one was restrained in any way. Officers also found a digital scale with white powdery residue. Finally, Fisher found a backpack and asked who owned it. Quilter said the backpack belonged to him and then gave consent to its search. Fisher found more cocaine inside the backpack. Once the officers completed the search, they arrested Quilter and Achao and transported them to the Colchester Police Station for processing.

Neither Achao nor Quilter were restrained in any way prior to or during the search of Room 317. In fact, Achao used his cell phone to call someone to say good-bye since he would be going to jail in Vermont.

## Discussion

Quilter raises a hodgepodge of constitutional arguments in support of his motion to suppress. First, he asserts he was detained without probable cause in violation of the Fourth Amendment when removed to the hallway to speak with Detective Kinney. Next, he claims he was subjected to custodial interrogation in the hallway without being advised of his rights under *Miranda v. Arizona*, 384 U.S. 436 (1966), in violation of

4

the Fifth Amendment.  Quilter also objects to entry into the room by Cole and Fisher in violation of the Fourth Amendment, and asserts that his consent was the product of that illegal entry. Finally, he argues his consent to search was involuntary, and that the subsequent search violated the Fourth Amendment.

Quilter's first two arguments, that he was detained in violation of the Fourth Amendment and subjected to custodial interrogation in violation of the Fifth Amendment, hinge upon the whether or not he was "seized" by the police or in custody at the time of giving consent to search the room.  "[A] person has been 'seized' within the meaning of the Fourth Amendment only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." *United States v. Mendenhall*, 446 U.S. 544, 554 (1980)). Hallmarks of seizure include "the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled." *Id.*  The officer need not state that a person questioned is "free to leave." *United States v. Springer*, 946 F.2d 1012, 1016 (2d Cir. 1991).  Absent a seizure, "then not only is the probable cause required for effecting an arrest not mandated, but even the reasonable suspicion required for a brief detention or *Terry* stop is not necessary." *United States v. Adegbite*, 846 F.2d 834, 837 (2d Cir. 1988).

To safeguard Fifth Amendment liberties, "*Miranda* warnings are required prior to the interrogation of a suspect who is in custody." *United States v. Ali*, 68 F.3d 1468, 1472 (2d Cir. 1995). In evaluating whether custody exists to trigger *Miranda*, The court's "ultimate inquiry is simply whether there is a 'formal arrest or restraint on freedom of movement' of the degree associated with a formal arrest." *California v. Beheler*, 463 U.S. 1121, 1125 (1983) (quoting *Oregon v. Mathiason*, 429 U.S. 492, 495 (1977)). The Court looks to the "circumstances surrounding the interrogation." *Thompson v. Keohane*, 516 U.S. 99, 112 (1995). Factors to consider include the length and location of the interrogation, *Tankleff v. Senskowski*, 135 F.3d 235, 244 (2d Cir. 1998), whether the suspect is physically restrained, *New York v. Quarles*, 467 U.S. 649, 655 (1984), and statements made by police regarding whether or not the person is under arrest, *United States v. Badmus*, 325 F.3d 133, 138-39 (2d Cir. 2003).

Detectives Cole and Kinney did not place any restrictions upon Quilter's freedom of movement when they interviewed him in the hallway. No physical restraints were used in any form, and the encounter took place in the middle of the day. The tone of the interrogation was civil and respectful. Quilter was never told he was not free to leave. In the consent form, Quilter was told he did not have to consent to the search and that he was not subjected to threats or promises of any kind. As a result, the

Court finds that Quilter was not in custody or seized in the hallway while being interviewed by Detective Kinney and when he gave consent to search Room 317.

Quilter objects to the entry into the room by Detective Cole and Cpl. Fisher. That objection appears to take two forms. First, he argues the entry violated the Fourth Amendment, and that his consent was a product of that violation. At the hearing, he added another facet to that violation: the illegal reentry was a coercive factor in his decision to consent to the search of the room. The court will address each of these issues in turn.

Warrantless entries by law enforcement officers into residences, including hotel rooms, are presumptively unreasonable under the Fourth Amendment. *See Payton v. New York*, 445 U.S. 573, 586 (1980); *Stoner v. California*, 376 U.S. 483, 490 (1964). Absent a warrant, courts turn to possible exceptions to the warrant requirement to assess the constitutional validity of a search. *See Katz v. United States*, 389 U.S. 347, 357 (1967). In this case, two exceptions to the warrant requirement are applicable: consent and exigent circumstances. *See Koch v. Town of Brattleboro*, 287 F.3d 162, 167, 169 (2002). Both of these exceptions justify entry into the room by Detective Cole and Cpl. Fisher.

The government bears the burden of proving by a preponderance of the evidence the voluntary consent of an authorized person to conduct the search. *United States v. Snype*,

441 F.3d 119, 130–31 (2d Cir. 2006). "This burden cannot be discharged by showing no more than acquiescence to a claim of lawful authority." *Bumper v. North Carolina*, 391 U.S. 543, 548-49 (1968). Rather, "'consent [may] not be coerced, by explicit or implicit means, by implied threat or covert force.'" *Snype*, 441 F.3d at 130-31 (quoting *Schneckloth v. Bustamonte*, 412 U.S. 218, 228 (1973)). To gauge whether consent is validly obtained or whether the suspect's "will was overborne," courts assess the "totality of all the surrounding circumstances-both the characteristics of the accused and the details of the interrogation." *Schneckloth*, 412 U.S. at 226. Among the factors to consider are the defendant's age, education, intelligence, awareness of his constitutional rights, "length of detention," and exposure to "repeated and prolonged . . . questioning" or "physical punishment." *Id*.

Prior to entering Room 317, Detective Cole asked Achao if he could enter the room. Achao nodded his head in affirmance and moved to permit entry to the room, which he shared with Quilter and Miranda. It was preceded only by Cole's request that both individuals in the room show their hands. That consent to enter was not the product of coercion nor promises of leniency. The tone of the statements which elicited consent was respectful and non-threatening. Consent was freely and voluntarily given, and entry by the officers did not constitute a violation of the Fourth Amendment.

Alternatively, exigent circumstances existed to justify entry into the room for officer safety. To qualify for the exception, Cole must have possessed probable cause and been faced with exigent circumstances. *See Kirk v. Louisiana*, 536 U.S. 635, 638 (2002) (per curiam). The test to determine whether exigent circumstances exist "is an objective one that turns on ... the totality of circumstances confronting law enforcement agents in the particular case." *See United States v. MacDonald*, 916 F.2d 766, 769 (2d Cir. 1990)(en banc). The question courts pose is whether "'the facts, as they appeared at the moment of entry, would lead a reasonable, experienced officer, to believe that there was an urgent need to render aid or take action.'" *United States v. Simmons*, 661 F.3d 151, 157 (2d Cir. 2011) (quoting *United States v. Klump*, 536 F.3d 113, 117-18 (2d Cir. 2008)). The Second Circuit has adopted a non-exhaustive list of six factors to determine existence of exigent circumstances:

> (1) the gravity or violent nature of the offense with which the suspect is to be charged; (2) whether the suspect "is reasonably believed to be armed"; (3) "a clear showing of probable cause . . . to believe that the suspect committed the crime"; (4) "strong reason to believe that the suspect is in the premises being entered"; (5) "a likelihood that the suspect will escape if not swiftly apprehended"; and (6) the peaceful circumstances of the entry.

*United States v. Reed*, 572 F.2d 412, 424 (2d Cir. 1978) (quoting *Dorman v. United States*, 435 F.2d 385, 392-93 (D.C. Cir. 1970)).

In this case, use of marijuana by the suspects was clearly established. Although it was not clear they were in possession of a weapon at the time of entry, Cole observed Miranda lying on

9

a bed with his hands under him.  Cole asked him to show his hands, and Miranda did not move.  Entry therefore became a matter of officer safety.  Since law enforcement officers must be permitted to secure environments for their own protection, *Minnesota v. Olson*, 495 U.S. 91, 100 (1990), this situation justified entry for that limited purpose.

The Court finds that entry into the room by Detective Cole and Cpl. Fisher was justified by the consent and exigent circumstances exceptions to the warrant requirement.  Quilter's argument that his consent was the product of an illegal entry into the room is therefore without merit.

Quilter's last argument is that the consent was coerced and involuntary.  In particular, he argues entry by the officers into the room increased the coercive nature of his encounter with Detective Kinney and that, based upon the totality of circumstances, his consent was involuntary.

The totality of circumstances surrounding Quilter's giving of consent to search the room warrant a finding of voluntariness.  Quilter was not in custody when consent was given.  He was advised he did not have to consent, and he acknowledged no threats or promises were made by the officers.  There is no evidence regarding whether he saw the officers enter the room, or the impact that such knowledge had upon his decision to give consent.  Assuming he did see the officers enter the room, it would be speculative for the court to assess how coercive that fact would be.  The court finds by a preponderance of evidence

that, based upon the totality of circumstances, Quilter gave consent to permit the officers to search the room freely and voluntarily.

For the reasons stated above, the Court hereby denies Quilter's Motion to Suppress.

Dated at Burlington, Vermont this 23rd day of April, 2012.

/s/William K. Sessions III  
William K. Sessions III  
U.S. District Court Judge